H. BENJAMIN MARKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ISAAC MARKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10806, and 10875.    Promulgated July 30, 1927.

Bonuses were credited upon the books of a corporation to its principal stockholders, the petitioners, but were not actually paid to them during the taxable year. *Held*, that the petitioners did not receive the bonuses during the taxable year and they are not liable to income tax upon them.

*Lawrence A. Baker, Esq., John V. Coffield, Esq.,* and *Leroy Sanders, Esq.,* for the petitioners.

*D. D. Shepard, Esq.,* for the respondent.

These proceedings were heretofore consolidated for hearing by appropriate order. The taxes in controversy are income taxes for the year 1920 in the respective amounts of $1,433.23 and $9,104.83. It is alleged by each petitioner that the Commissioner has erroneously included in income for the year 1920 an amount representing a bonus credited to him upon the books of the corporation of which he was an officer and a principal stockholder, but which he did not actually receive during the taxable year.

### FINDINGS OF FACT.

The petitioners are individuals residing at Indianapolis, Ind. During the year 1920 they were officers and the principal stockholders of the General Engineering Co., a corporation engaged in the business of dismantling Camp Bowie, near Fort Worth, Tex. They had organized the corporation for that purpose during the year 1919. They each held 498 of the 1,000 shares of stock of the company, and their brother-in-law, one Louis Sakowitz, held 2 shares. The remaining 2 shares were not issued. The contract for dismantling the camp was obtained from the Government by bid at a cost of $66,000. This money was all furnished by Isaac Marks and H. Benjamin Marks, a large portion being borrowed for the purpose.

During the year 1920 Isaac Marks, president and general manager, and H. Benjamin Marks, vice president of the company, the petitioners herein, received salaries in the amounts of $12,000 and $5,000 respectively. The corporation kept its books and accounts upon a fiscal year basis ending June 30. At the close of the fiscal year ended June 30, 1920, it credited certain amounts as bonuses to the personal accounts of its officers and employees, totaling $82,000. The salaries paid and the bonuses credited, were as follows:

| Name | Salary | Bonus | Total |
|---|---|---|---|
| H. B. Marks | $10,000 | $5,000 | $15,000 |
| Isaac Marks | 12,000 | 28,000 | 40,000 |
| Louis Sakowitz | 6,000 | 6,000 | 12,000 |
| T. Moynahan | 12,000 | 33,000 | 45,000 |
| D. S. Rosenberg | 10,000 | 10,000 | 20,000 |
| Total | 50,000 | 82,000 | 132,000 |

Moynahan and Rosenberg owned no shares of stock of the General Engineering Co. The net income of the corporation for the fiscal year ended June 30, 1920, after the deduction of the bonuses

credited, was $100,595.97. No part of the bonuses credited to the petitioners upon the books of the corporation during the year 1920 was paid to them during the year. The balance sheets set up by the company at June 30, 1920, and at June 30, 1921, showed the following assets and liabilities:

*Balance Sheets*

|  | June 30, 1920 | June 30, 1921 |
|---|---|---|
| **ASSETS** | | |
| Cash | $2, 336. 59 | $11, 787. 22 |
| Accounts receivable | 55, 331. 97 | 40, 638. 99 |
| Notes receivable | 28, 000. 00 | 30, 833. 24 |
| Personal accounts | 5, 297. 20 | 16, 625. 26 |
| Installment contracts outstanding | 76, 954. 59 | 144, 602. 05 |
| Merchandise inventory | 3, 125. 40 | 350. 00 |
| United States Liberty bonds | 3, 312. 56 | 3, 612. 56 |
| Land and buildings | 159, 989. 36 | 100, 483. 56 |
| Autos and trucks | 1, 964. 66 | 982. 33 |
| Furniture and fixtures | 197. 68 | 300. 26 |
| Linens | 113. 98 | 75. 98 |
| Total assets | 336, 623. 99 | 350, 291. 45 |
| **LIABILITIES** | | |
| Accounts payable | 2, 700. 00 | --------- |
| Accounts payable, personal | 75, 519. 85 | 68, 078. 37 |
| Notes payable | 27, 254. 00 | 53, 255. 19 |
| Vendors' liens discounted | 7, 500. 00 | 14, 250. 00 |
| Unrealized gross profits | 27, 054. 17 | 58, 425. 21 |
| Capital stock | 96, 000. 00 | 96, 000. 00 |
| Surplus | 100, 595. 97 | 60, 282. 68 |
| Total liabilities | 336, 623. 99 | 350, 291. 45 |

The item " notes receivable," as above shown, represents promissory notes given to the corporation in part payment for houses which it had constructed, partly from the material reclaimed from the camp, upon nearby building lots which it had purchased. This building venture was undertaken in cooperation with certain civic organizations of Forth Worth as a means of providing much needed additional housing facilities to meet the rapid growth of the city. The item " installment contracts outstanding " represents the amounts due from purchasers of these houses on the unpaid balance of the purchase price. The item " land and buildings " represents property which had been thus acquired by the corporation and which was being held for sale.

In making its contract with the United States Government for the dismantling of the Army camp, the petitioners on behalf of the corporation assumed full liability for any and all claims and demands

for damages that might be made against the Government in respect of the use and occupancy by the Government of the land comprising the camp site. The camp occupied a tract of about 1,400 acres, a part of which had been previously subdivided and sold for building lots. The ownership of the land was, therefore, widely scattered and the liability in respect of the number of claims that might be made was proportionately large. The company deemed it advisable to maintain a reserve sufficient to offset this liability.

The petitioners kept no individual books of account. They made their income-tax returns for the year 1920 upon a cash receipts and disbursements basis and did not report as income any amounts credited to them as bonuses upon the books of the company.

OPINION.

SMITH: The sole issue raised in these appeals was whether certain amounts credited to the petitioners upon the books of the General Engineering Co. during the year 1920 were received by them during that year so as to constitute a part of their taxable income for the year. The respondent, relying upon the decision of the Board in the *Appeal of John A. Brander,* 3 B. T. A. 231, has held that the petitioners are liable to income tax in respect of bonuses credited to their accounts upon the corporation's books, upon the ground that they were " constructively " received by them.

In the *Brander* appeal we stated with reference to " constructive " receipt:

This doctrine, as we have made clear in several appeals, is not to be applied lightly, but only in situations where it is clearly justifiable. When taxable income is consistently computed by a citizen on the basis of actual receipts, a method which the law expressly gives him the right to use, he is not to be defeated in his *bona fide* selection of this method by " construing " that to be received of which in truth he has not had the use and enjoyment.

It does not appear that the General Engineering Co. had on hand at any time during the year 1920 sufficient cash, or assets which might be readily converted into cash, to pay the bonuses credited to its officers and employees on June 30, 1920. On that date it had on hand cash in the amount of $2,336.59 and Liberty bonds in the amount of $3,312.56. It had other assets consisting of accounts receivable, notes receivable, installment contracts outstanding, land and buildings and other lesser items. It can not be said that the petitioners had the use and enjoyment of such assets during the year 1920.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON and LOVE.